JAMES G. MONGER, et al. v. M. H. SELLERS and J. M. HAGWOOD.

Eastern Section. February 11, 1928.

Petition for Certiorari denied by Supreme Court, May 26, 1928.

R. H. Ward, of Kingston, for appellant.

O. T. Tindell and Elmer Eblen, of Kingston, and J. W. Stone, of Harriman, for appellee.

OWEN, J. The complainants have appealed from a decree of Special Chancellor, Hon. Horace M. Carr, who tried this cause in the lower court and denied complainants most of the relief they sought. Defendants were taxed with the cost.

We are presented at the outset with a very large record. This case has been warmly contested, some feeling is exhibited between litigants and the cause was thoroughly argued at the bar. The complainants are James G. Monger, Mallie Monger and Richard W. Monger, children of the late James E. Monger of Anderson county. The defendants are M. H. Sellers and J. M. Hagwood and their bondsmen on their bond as executors of the estate of James E. Monger deceased. The bill also made William Monger and Gug Monger, sons of James E. Monger, defendants. It is charged in the bill that the executors had failed to make proper settlement of the estate of complainants' father. Complainants sought an accounting and charged the executors with waste.

The executors filed an answer denying all the material allegations of the bill and insisting that complainants had been overpaid.

It appears that the defendant M. H. Sellers did all the active work in connection with winding up or administering the estate of James E. Monger, and his codefendant Hagwood was an executor nominally. The bill also charged that the executors had exceeded their power in selling a farm belonging to their testate; that this farm should have been partitioned among the five heirs. This feature of the bill, however, was apparently abandoned.

Numerous depositions were taken. It appears that the defendant Sellers is a rural mail carrier and that when matters were not so active with the lawyers connected with this lawsuit a day would be used in taking a part of defendant Sellers' deposition. He was called on numerous days and after many questions were propounded and answers thereto given an adjournment would be taken until

some future date. Counsel almost put the defendant Sellers in testifying in a class with Tennyson's Brook. After the pleadings were made up and some proof taken there was a reference to the Clerk and Master to take and state an account between the parties. The Clerk and Master heard additional proof and filed a very elaborate report. Exceptions were made by both sides to this report, but with some minor modifications the report of the Clerk and Master was confirmed by the Chancellor. The complainants excepted to this final decree, prayed and were granted an appeal to this court and have assigned seventeen errors.

The first group of these errors complain of the action of the court in sustaining defendants' exception to the Master's report in regard to Richard W. Monger. The Clerk and Master reported that the executors were indebted to Richard W. Monger in the sum of $635.84. The first, second, third, tenth, eleventh, thirteenth and seventeenth assignments of error all go to the question of the court's action in rendering a judgment against complainant Richard W. Monger for $520.16 and in not rendering a judgment against defendants in favor of said Richard W. Monger for the sum of $635.84. The fourth assignment complains of certain credits allowed the executors for services, of $300 each, and their attorney, O. T. Tindell $100, which the Clerk and Master had charged and had paid out and were proper. The fifth assignment insists that the executors should have been charged with interest from November 15, 1922. The sixth, seventh, eighth and ninth assignments all complain of the action of the Chancellor in sustaining certain exceptions in behalf of the defendants, and will be treated together. The fourteenth, fifteenth and sixteenth assignments all complain of error in the Chancellor's allowing certain charges against the complainant James G. Monger.

The Clerk and Master's report shows that the defendants' executors received $3108.87 in personalty. They sold the farm of their testate for $8118.66, making a grand total of $11,227.53. The executors were allowed credits amounting to $1923.23. The farm was first sold to one of the heirs for $7500. The purchaser failed to comply with the terms of the sale. Sometime thereafter it was sold for $8000. Part of the consideration was on time and the executors collected $118.86 interest. The net due the estate was $9304.30, —one-fifth of this being $1860.86. The only complaint as to the $9304.30 is the $600 allowed the executors and $100 allowed their attorney, Tindell. Out of this expense of $1923.23, the executors had paid $200 to two grandchildren of their testate, according to the terms of his will.

As to the credits for executors' commissions and attorney's fees, the executors had been allowed these credits in the county court of

Anderson county where they made settlement, and we are of opinion that these credits were proper, just and equitable. The fee of $100 was a small fee for advising these executors. The executors were slow in distributing this estate. The Special Chancellor taxed them with all costs. On the other hand the two main complainants here,—James G. Monger and Richard W. Monger, received much aid and assistance from the executor Sellers. They depended upon him and they needed his assistance. It appears that at the time of the death of their father James Monger and his wife did not have sufficient clothing to attend the funeral and Sellers became obligated for more than $30 for necessary clothing so that James and his wife could attend the funeral of his (James G. Monger's) father. Richard Monger was convicted and sent to the State prison. He was confined in the prison at Petros for several years. It appears that he made his escape and the defendant Sellers and another friend persuaded Richard to return to the State prison at Petros. They carried him there in an automobile and interceded with the warden or superintendent of the prison in behalf of Richard and asked that his good time not be taken from his sentence on account of his escape. While Richard was in prison he had the defendant Sellers to make numerous advances for him from time to time. Richard Monger did not testify. Evidently James Monger, Sr., had the utmost confidence in Sellers and his coexecutor. It appears that Monger had four grown sons, but he chose two friends to be his executors.

The assignment complaining of the credits for commissions and attorney's fees is overruled.

The Clerk and Master reported that the executors had overpaid W. C. Monger $25; that there was due Guy Monger $129.22. The Chancellor reduced this to $9.22, because defendant Sellers had paid Guy Monger $120 for which the Clerk and Master had failed to give credit. The Clerk and Master reported that there was due the complainant Mallie Monger $60.86. While she has appealed, there is no complaint here as to the amounts due Guy Monger or Mallie Monger and no complaint of the overpayment of $25 to W. C. Monger. The Clerk and Master reported that James G. Monger had received $1509.25 and there was still due him $351.59. However, it appeared that James G. Monger shortly after these defendants qualified as executors became involved in a divorce suit with his wife. He was also in trouble, having assaulted someone. The defendant Sellers and other friends interceded for James G. Monger. The wife had attached by garnishment all of James E. Monger's estate. A compromise agreement was made, whereby the wife procured two-thirds of James G.'s share of the estate and James G. was to receive one-third. It appears that James G. was placed in jail and

he sent for the defendant Sellers, and upon the advice of an attorney who had been employed, James G. was committed to the hospital for the insane at Lyons View, near Knoxville. He was never adjudged insane, but we infer that the criminal matters were dropped. The superintendent of the insane asylum discharged James G., and during this trouble the executors at the request of James G. Monger, and for his benefit, paid out $535.45. The Clerk and Master did not allow this credit, stating that he did not know whether it was a proper credit or not, because it was paid to a man while he was insane. James G. did not testify and we are of opinion that the Chancellor properly allowed this credit, and the assignments on behalf of James G. Monger are overruled and disallowed.

As to the assignments in regard to Richard Monger, it appears that after the burial of James Monger a majority of his children (if not all) met with the executors and by agreement apportioned and divided quite a bit of the household furnishing, quilts, bedding, etc., and it was agreed that each heir should be charged with $25, and the executors so made the $25 charge to each. The record shows that Richard W. Monger had been paid $1156 in addition to the $25 for household goods. Sellers had also given Richard Monger a secured note with personal endorsement for $1200, making a total of $2381 chargeable to Richard. His part of the estate was $1860.84, leaving him overpaid $520.16. The Special Chancellor gave a decree for this.

It appears that the regular Chancellor of Roane county, Hon. J. H. Wallace, had been one of the attorneys for Mrs. James Monger in her divorce suit and for this reason recused himself and Hon. H. M. Carr of the Harriman bar was selected as Special Chancellor.

There appears on the final decree, at page 196 of the transcript, the following:

"That said R. W. Monger brought suit in the chancery court of Roane county, styled R. W. Monger v. M. H. Sellers et al., to collect a note M. H. Sellers gave to R. W. Monger with W. F. Gallegher as security for $1200 as a payment of that much due said Monger out of the estate of said J. E. Monger deceased; that on May 23, 1926, R. W. Monger recovered a judgment on pro confesso for the full amount of said note, with interest and attorney's fees, which judgment defendants sought to have set aside, but failed, and it was made final on July 5, 1926; that at the hearing of this cause on May 30, 1927 it appeared to the court by admission of parties in open court that said cause of R. W. Monger v. M. H. Sellers, et al., had been finally disposed of, and the court suspended further hearing on the distributive share of said R. W. Monger, until his action to recover on said note was finally disposed of, and it now appearing that his said cause was finally disposed of on July 23, 1927,

as found hereinbefore. . . . Now since said R. W. Monger has recovered judgment for the full amount of said note without any credits, the court is of the opinion that he should be charged with the money he has received in the settlement of their accounts in this cause."

It is insisted that there is not a line of proof to sustain the court's decree in regard to his pronouncing that R. W. Monger had recovered judgment in another cause in the chancery court of Roane county against the defendant M. H. Sellers for $1200 and interest and attorney's fees. The decree recites that this was admitted in open court. It would have been better practice to have had this admission reduced to writing and filed in the record, but we are satisfied that this learned Special Chancellor would not have pronounced the decree that he did if he had not had some basis for so doing and some evidence that such a suit was pending and later such a judgment as stated was procured. However it is not necessary to rely upon any admission made in open court. This was a bill filed for an accounting. Complainant R. W. Monger is seeking equity and he must do equity. The undisputed evidence shows that Sellers had overpaid the complainant Richard Monger $520.16. The Chancellor so decreed and gave a judgment against R. W. Monger for the overpayment. This was a bill for an accounting. It was not necessary for Sellers to file a cross-bill to recover the overpayment.

It is the usual practice that a defendant who desires affirmative relief must file a cross-bill to obtain it, but one exception is that the defendant without a cross-bill may have a recovery for the balance found due him upon an accounting sought by the complainant. This exception to the general rule is justified by the fact that the relief to the defendant is within the scope of the original bill and by implication within its prayer. On this ground the adjudication of balances to the defendant is allowable. Griffith v. The Security Association, 100 Tenn., 412; Fisher v. Stovall, 85 Tenn., 316; Polk v. Mitchell, 85 Tenn., 643; Allen v. Allen, 11 Heisk., 387.

Judge McFarland, delivering the opinion in the case of Allen v. Allen, supra, said: "But it is now argued that, as no cross-bill was filed, it was error to render a decree for the defendant for the balance due him; he should have been limited to his action at law. The position is not maintainable. The complainant having prayed for an accounting must abide the result of it. In such case no cross-bill is necessary."

As to the other assignments of error in regard to the overruling of exceptions of the defendant to the Master's report, and as to not charging defendant with interest, said assignments are overruled and disallowed.

The merits of this case have been reached in the lower court. All of the assignments of error are overruled and the judgment of the lower court is affirmed. Complainants will pay the cost of the appeal, for which execution will issue, they having filed the oath in lieu of appeal bond.

Heiskell and Senter, JJ., concur.